UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **CORAM DEO ACADEMY,** § § § *Plaintiff,* § v. § § **PHILADELPHIA INDEMNITY** § **INSURANCE COMPANY,** § § *Defendant.* § | Case No. 4:25-cv-00857 |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Coram Deo Academy ("Plaintiff" or "Coram Deo"), by and through its attorneys of record, and hereby files Plaintiff's Original Complaint for damages caused by Philadelphia Indemnity Insurance Company ("Defendant"). In support of such claims and causes of action, Plaintiff would respectfully show this Honorable Court as follows:

## INTRODUCTION

1. Plaintiff Coram Deo is a private school whose properties located at 9645 Independence Parkway, Plano, Texas 75025, and 9725 Independence Parkway, Plano, Texas 75025 (collectively the "Properties"), sustained severe and increasing loss from a covered weather-related event, namely a wind and hail-bearing storm that occurred on or about June 16, 2023 (the "Storm").

2. In the aftermath of the Storm, Plaintiff relied on Defendant, its insurance carrier, to help it recover and rebuild, as per the terms of Insurance Policy No. PHPK2455827, eff. Aug. 19, 2022, to Sept. 12, 2023 (a certified copy of which is attached hereto as Exhibit "A") ("the "Policy").

3. However, Defendant improperly adjusted Plaintiff's claim, bearing Claim No. 1586870 (the "Claim"), thereby depriving Plaintiff of the coverage it purchased from Defendant. As a result, legal action is now necessary to ensure Plaintiff receives the coverage owed to it by Defendant.

## PARTIES

4. Plaintiff, Coram Deo Academy, is a Texas Nonprofit Corporation with its headquarters and principal place of business located at 417 Oakbend Drive, Ste. 200, Lewisville, Texas 75067.

5. Defendant, Philadelphia Indemnity Insurance Company, is a Pennsylvania insurance corporation that engaged in the business of selling insurance policies, including Plaintiff's insurance policy, within the State of Texas. Defendant's headquarters and principal place of business is located at One Bala Plaza, Suite 100, Bala Cynwyd, Pennsylvania 19004. Defendant may be served with process via its registered agent, CT Corporation System, located at 1999 Bryan Street, Ste. 900, Dallas, Texas 75201, or wherever it may be served with process in compliance with the governing procedural rules for the State of Texas.

## JURISDICTION AND VENUE

6. This Honorable Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because of the diversity of citizenship of the parties and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

7. An actual justiciable controversy exists between Plaintiff and Defendant within the meaning of 28 U.S.C. § 2201 regarding whether Defendant breached its duties to Plaintiff in violation of the express terms, conditions, and provisions of the Policy, as more particularly described below.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

## FACTUAL BACKGROUND

9. Coram Deo Academy, owns the subject school properties located at:

    a. 9645 Independence Parkway, Plano, Texas 75025; and

    b. 9725 Independence Parkway, Plano, Texas 75025.

10. The Properties consist of multiple buildings comprising offices, classrooms, sheds, recreational spaces, and worship spaces, with the buildings primarily covered by composite shingle or metal structural panel roofing systems.

11. As consideration for Plaintiff's payment of an annual premium, Defendant issued the Policy to Coram Deo Academy, as a named insured.

12. Under the Policy, Defendant agreed to, *inter alia*, insure the Properties against direct physical loss caused by wind and hail, subject to all terms, conditions, and exclusions of the Policy:

> **SECTION A. COVERAGE**
>
> We will pay for direct physical "loss" to Covered Property caused by or resulting from any of the Covered Causes of Loss.
>
> **1. Covered Property**
>
> Covered Property, as used in this Coverage Form, means the following types of property for which a Limit of Insurance is shown in the Declarations.
>
> b. **"Buildings"** described in the Declarations including:
>
>   (2) Completed additions;
>
>   (3) Permanently installed:
>
>     (a) Fixtures;
>
>     (b) Machinery; and
>
>     (c) Equipment;
>
> **F. General Conditions**
>
> …
>
> **4. Policy Period, Coverage Territory**
>
> Commercial Property Condition H., Policy Period, Coverage Territory, is replaced by the
>
> following:
>
> a. We cover "loss" commencing:

3

> > (1) During the Policy Period shown in the Ultimate Cover Program Declarations; and
> >
> > (2) Within the Coverage Territory.
> 
> b. The Coverage Territory is:
> 
> > (1) The United States of America; and
> >
> > (2) Canada.

*Ex. A, Property Coverage Form (PI-ULT-007 11.98) at 1-3.*

***

> **A. <u>Covered Causes of Loss</u>**
>
> > **Covered Causes of Loss** means Risks of Direct Physical Loss unless the "loss' is:
> >
> > a. Excluded in Section **B., Exclusions**; or
> >
> > b. Limited in **Section C., Limitations**.

*Ex. A, Causes of Loss Form (PI-ULT-008 11.98) at 1.*

13. On or about June 16, 2023, while the Policy was in full force and effect, the Properties sustained direct, physical loss resulting from a hail-bearing storm, which constitutes a covered loss under the Policy.

14. The Storm damaged the Properties' composite shingle, asphalt starter, metal structural panel, and/or TPO roofing systems, as well as metal flashing, gutters, downspouts, appurtenances, and wood siding.

15. Plaintiff timely notified Defendant of the loss, at which time Defendant acknowledged the Claim, and assigned it Claim No. 1586870.

16. On or about June 27, 2023, Defendant performed an inspection of the Properties through its third-party adjuster, Brad Livengood with Engle Martin & Associates ("EMA") and engineer, Joel Aldrich with Forensic Engineering Company ("FEC").

17. On or about July 27, 2023, FEC issued a report (the "FEC Report") concluding no hail sized 0.75 inches or larger impacted the Properties from the Storm. FEC further concluded that hail sized up to 2.125 inches impacted the Property from a weather event on May 19, 2023, but that the damage to the Properties was cosmetic.

18. On or about August 9, 2023, Defendant provided an estimate of damages from its third-party adjustor, Engle Martin (the "EM Estimate") estimating a $110,145.73 Replacement Cost Value ("RCV") for repairs, reduced to an undisputed payment in the amount of $29,346.53 after adjusting for $24,509.56 withheld recoverable depreciation and $56,289.64 applied deductibles.

19. Pursuant to the EM Estimate, Defendant issued checks to Plaintiff in the amounts of $22,257.61 and $7,088.92 on or about August 10, 2023, and August 15, 2023, respectively.

20. Due to the significant undervaluing of Plaintiff's claim by Defendant, Plaintiff retained Blackstone Claim Services ("BCS") to assist with the claim handling process on or about November 10, 2023.

21. On or about December 4, 2023, Gary Pennington with BCS and Ryan Kerns with JWC General Contractors ("JWC") performed an inspection of the Properties.

22. Based on the findings of the BCS and JWC inspection, Plaintiff engaged a roofing forensics firm, Chaparral Consulting and Forensics ("CCF"), to perform a technical analysis and inspection of the Properties to evaluate the extent of the damages caused by the Storm.

23. On or about March 12, 2024, Gary Treider of Chaparral Consulting and Forensics performed an inspection of the Properties.

24. On or about June 24, 2024, CCF issued a roofing forensics report (the "CCF Report") finding that a significant wind and hailstorm occurred at the Properties, with hail up to 2.5-inches or larger in diameter, that resulted in hail impact damage to the Properties' structural metal panel roofing systems, TPO systems, EPDM systems, metal flashing, gutters, downspouts, appurtenances, and wood siding.

25. Based on the CCF findings, BCS provided an estimate on or about June 26, 2024 (the "BCS Estimate") determining that the actual RCV to perform the necessary repairs to restore the properties to their pre-loss condition totaled $633,801.15.

26. Due to the conflicting findings by Defendant and Plaintiff's roofing experts, a joint inspection of the Properties was conducted on or about July 9, 2024 by Brad Livengood of EMA, Gary Pennington of BCS, Gary Treider of CCF, and Joel Aldrich of FEC.

27. Following the joint inspection, on or about September 19, 2024, Defendant obtained an estimate of damages from its retained adjuster Young & Associates (the "Y&A Estimate) determining a $289,477.37 RCV for repairs to the Storm-caused damage to the Properties, less $39,276.31 withheld for recoverable depreciation, for an Actual Cash Value ("ACV") of repairs totaling $250,201.06.

28. Based on the Y&A Estimate, Engle Martin recommended Defendant issue an additional undisputed payment to Plaintiff in the amount of $38,285.69, after accounting for $39,276.31 withheld recoverable depreciation, $182,569.84 applied deductibles, and $29,346.53 prior payments.

29. Based on the Engle Martin recommendation, Defendant issued $35,501.58 and $2,784.11 checks to Plaintiff on or about September 27, 2024.

30. On or about September 26, 2024, Defendant sent notice of the Claim's partial denial.

31. Plaintiff made a timely and complete claim, and cooperated in every aspect of the same, yet this claim has been unfairly adjusted and delayed for an excessive period of time. This delay has now compounded the loss at the Property, all of which stands in stark contrast to the representations made to Plaintiff by Defendant when it purchased the policy.

32. Defendant grossly underpaid Plaintiff's Property claim by underestimating the value of the damages during its investigation. Defendant's adjusters prepared an estimate of damages that is deficient based on an improper and inadequate results-oriented investigation that ignored obvious hail damage.

33. Defendant also failed to make timely payment of damages based on the improper and inadequate investigations and analysis performed by its representatives. The Policy unambiguously insures the covered loss and resulting damages.

34. As a result of Defendant's failure to adequately investigate Plaintiff's covered loss and failure to pay for all of the damages as required by its Policy, Plaintiff has been unable to properly repair the Property.

35. As a result of Defendant's failure to properly adjust the claim and its refusal to pay the true value of the covered loss to the Property, Plaintiff was left with no choice but to hire its own professionals, incurring significant costs and expenses associated with proper evaluation and investigation of Plaintiff's covered loss.

36. As a result of Defendant's failure to honor its obligations and duties under the Policy, Plaintiff was also forced to retain the services of legal counsel to protect its rights and remedies under the Policy and as an insured.

37. As of this date, Plaintiff has met, complied with, and continues to meet and comply with, all conditions precedent and duties under the subject insurance Policy. Otherwise, all such conditions and duties have been waived by Defendant.

## BREACH OF CONTRACT

38. Plaintiff incorporates by reference all allegations set forth in paragraphs 1 through 37 above as though fully stated herein.

39. Plaintiff entered into a valid and enforceable written insurance contract with Defendant pursuant to the laws of Texas. Defendant sold, in exchange for valuable consideration, the Policy, whereby Defendant agreed, *inter alia*, to insure, the Properties against direct physical loss caused by wind or hail.

40. The Policy outlined contractual obligations to be performed by both Plaintiff and Defendant, including but not limited to, Plaintiff paying policy premiums for its insurance coverage, and Defendant providing said coverage for claims in the event of covered damage.

41. Plaintiff fully performed its contractual obligations and all conditions precedent for coverage, including making timely policy premium payments and timely reporting of covered losses upon discovery, as required by the insurance contract with Defendant.

42. Defendant then materially breached the contract by failing to pay for the full value of the damages to the Properties as required under the Policy.

43. Defendant had no reasonable basis for denying the benefits of the insurance Policy and refused to pay the full amount of the loss without just cause or excuse.

44. Due to Defendant's breach of the Policy, Plaintiff has suffered damages by way of unpaid insurance proceeds and benefits. Plaintiff's damages include, without limitation, actual damages and interest, because of Defendant's breach of contract.

## VIOLATIONS OF CHAPTER 542 OF THE TEXAS INSURANCE CODE

45. Plaintiff hereby incorporates by reference all allegations set forth in paragraphs 1 through 44 above as though fully stated herein.

46. Defendant's actions constitute certain violations of Chapter 542 of the Texas Insurance Code, as Plaintiff remains unpaid since the underlying hail damage event occurred.

47. Specifically, Defendant violated Section 542.058 of Chapter 542 of the Texas Insurance Code in failing to adhere to the statutorily prescribed deadlines in the handling, adjustment, and payment of insurance claims. Defendant possessed all necessary information to pay this claim for more than half a year, which is objectively deficient.

48. As a result of the above-referenced violations and acts committed by Defendant, and in accordance with Section 542.060 of the Texas Insurance Code, Defendant is liable to pay Plaintiff,

in addition to the amount of the claim, simple interest on said amount as damages. The same is to be calculated each year, at the rate determined on the date of judgment under governing Texas law. Plaintiff is further entitled to prejudgment interest on the amount of the claim, as provided by law. Interest awarded under this subsection as damages accrues beginning on the date the claim was required to be paid.

## ATTORNEY'S FEES

49. Plaintiff is entitled to all reasonable and necessary attorney's fees pursuant to the Texas Insurance and sections 38.001-.005 of the Civil Practice and Remedies Code and has previously given notice pursuant to Chapter 38.001 of the Civil Practice and Remedies Code, that they will seek all available attorney's fees, costs of court, penalties, and any additional remedies recoverable under Texas law.

50. Furthermore, Plaintiff has also been forced to retain legal services of the undersigned attorneys to protect and pursue the present claims on its behalf as a result of Defendant's Texas Insurance Code violations. Accordingly, Plaintiff also seeks to recover their court costs, reasonable and necessary attorneys' fees as permitted under governing Texas law, as well as any other such damages to which Plaintiff may be justly entitled.

## JURY DEMAND

51. Plaintiff hereby demands a jury for all triable issues and has tendered payment for a jury trial contemporaneously with the filing of this Original Complaint.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that it be awarded actual damages in excess of the minimum jurisdictional limits of this Court, pre- and post- judgment interest as allowed by law, costs of suit, all such additional relief specified within this Original Petition, and all such other relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**HUNZIKER & BARMORE, PLLC**

By: */s/ Benjamin P. Barmore*
    Benjamin P. Barmore
    Texas State Bar No. 24073076
    Scott G. Hunziker
    Texas State Bar No. 24032446
    HUNZIKER & BARMORE, PLLC
    The Lyric Tower
    440 Louisiana St., Ste. 1825
    Houston, Texas 77002
    (281) 817-6000 Office
    (281) 816-9025 Facsimile
    Benjamin@HunzBarLaw.com
    Scott@HunzBarLaw.com

**ATTORNEYS FOR PLAINTIFF**